IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

JAMES ALVIN BARNETT,

   Plaintiff

 VS.

JAMES DONALD, *et al.*,

   Defendants

NO. 5:06-CV-225 (CWH)

PROCEEDINGS UNDER 42 U.S.C. § 1983
BEFORE THE U.S. MAGISTRATE JUDGE

# O R D E R

  Pending before the court are motions for summary judgment filed by plaintiff James Alvin Barnett and the defendants in the above-styled case. Tabs #63 and #60. Pursuant to Rule 72 of the Federal Rules of Civil Procedure and Local Rule 72.1, all parties have consented for the United States Magistrate Judge to conduct any and all proceedings herein including the ordering of the entry of judgment. Any appeal from this judgment permitted by law may be taken directly to the Court of Appeals of the Eleventh Circuit in the same manner as an appeal from any other judgment of a district court. 28 U.S.C. § 636(c)(3).

  Plaintiff Barnett has sued the defendants, employees of the Georgia Department of Corrections in whose custody he was incarcerated at all times pertinent to this litigation. He asserts that they violated his federal rights established pursuant to the Interstate Agreement on Detainers Act ("IAD") by failing to forward his completed IAD paperwork to authorities in Tennessee where he faced prosecution on outstanding criminal charges, resulting in a delay in disposition of those charges. The IAD, codified at 18 U.S.C. App. §2 and Ga. Code Ann. §§42-6-20, *et seq.*, is a compact among 48 consenting states, including Georgia and Tennessee, which includes, *inter alia*, a provision that an inmate must be brought to trial within 180 days after he provides the correct paperwork to the prosecuting officer and court in the state that has a pending, untried indictment against him. *Id.* at Art. III(a).[1]

---

[1] In pertinent part, Article III(a) of the IAD holds that

> Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint. . ..

## SUMMARY JUDGMENT STANDARD

Rule 56 of the *Federal Rules of Civil Procedure* dealing with motions for summary judgment provides as follows:

> The motion shall be served at least 10 days before the time fixed for the hearing. The adverse party prior to the day of hearing may serve opposing affidavits. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

Summary judgment can only be granted if there are no genuine issues of material fact and if the moving party is entitled to judgment as a matter of law. *Fed.R.Civ.P. 56(c);* ***Warrior Tombigbee Transportation Co. v. M/V Nan Fung***, 695 F.2d 1294, 1296 (11th Cir. 1983). While the evidence and all factual inferences therefrom must be viewed by the court in the light most favorable to the party opposing the motion, the party opposing the granting of the motion for summary judgment cannot rest on his pleadings to present an issue of fact but must make a response to the motion by filing affidavits, depositions, or otherwise in order to persuade the court that there are material facts present in the case which must be presented to a jury for resolution. *See* ***Van T. Junkins & Assoc. v. U.S. Industries, Inc.***, 736 F.2d 656, 658 (11th Cir. 1984).

Specifically, the party seeking summary judgment bears the initial burden to demonstrate to the court the basis for its motion by identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions which it believes show that there is an absence of any genuine issue of material fact. ***Hairston v. The Gainesville Sun Publishing Co.***, 9 F.3d 913 (11th Cir.1998). In determining whether the moving party has met this burden, the court must review the evidence and all factual inferences drawn from this, in the light most favorable to the non-moving party. ***Welch v. Celotex Corp.***, 951 F.2d 1235, 1237 (11th Cir. 1992).

If the moving party successfully meets this burden, the burden then shifts to the non-moving party to establish by going beyond the pleadings, that there are genuine issues of material fact to be resolved by a fact-finder. ***Clark v. Coats & Clark, Inc***., 929 F.2d 604, 608 (11th Cir. 1991). Genuine issues are those as to which the evidence is such that a reasonable jury could find for the non-movant. ***Anderson v. Liberty Lobby, Inc***., 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

**FACTS**

The facts involved in this case are undisputed: plaintiff James Alvin Barnett was incarcerated in the Georgia prison system and had an untried indictment pending against him in the state of Tennessee. Barnett filed paperwork pursuant to the IAD with Georgia prison authorities so that he might be brought to court in Tennessee within 180 days. However, at the time of Barnett's filling of the IAD paperwork, Tennessee had not yet filed a detainer with Georgia authorities.

Tennessee authorities eventually filed such a detainer, but the defendant employees of the Georgia Department of Corrections ("GDC") refused to forward the paperwork through the proper channels because they believed it to be a requirement of the IAD that a detainer be in place at the time an inmate submitted his request. Representatives of the GDC told Barnett that he needed to re-file the paperwork in order for his request to be valid, but Barnett refused to do so because he did not want to reset the 180 day period.

As discussed in this court's order denying the defendants' motion to dismiss, the GDC was incorrect in its interpretation of the IAD: There are four factors which must be present in order to trigger the requirement that a plaintiff be brought to trial within 180 days, and the sequence in which those four factors occur is of no consequence. *See* Tab #47. (The defendants have devoted two pages of their instant brief in support of their motion for summary judgment to this issue, and provide nothing to convince the court that its previous ruling was incorrect.)

3

Finally, although the Georgia authorities refused to acknowledge the validity of Barnett's IAD paperwork for purposes of sending him to Tennessee so that the protections of Article III could be invoked, they apparently believed the IAD documents to be sufficient to support plaintiff Barnett's waiver of extradition to Tennessee.[2]

**ISSUES**

There are a number of legal issues stemming from this factual circumstance: The court must decide (1) whether the IAD creates a federal right for prisoners who seek to invoke its protection; and if it does create such a right,(2) whether a plaintiff has a recourse for monetary damages through §1983 if prison authorities fail to forward the IAD paperwork to the receiving state within a reasonable time; and if a plaintiff has such a recourse, (3) whether such monetary damages would be limited to nominal and/or compensatory or if punitive damages could be appropriate. Meanwhile, hanging over the entirety of the case is the issue of qualified immunity, which shields government actors from suit (and therefore liability) if their actions do not violate clearly established federal law.

**DISCUSSION**
**Federal Right**

The first step in seeking redress pursuant to § 1983 is that "a plaintiff must assert the violation of a federal *right*, not merely a violation of federal *law*." **Blessing v. Freestone**, 520 U.S. 329, 340 (1997). In order to determine whether a statute gives rise to such a right, the Supreme Court has set forth a three pronged test:

---

[2]The IAD paperwotk submitted by plaintiff Barnett contained an express waiver of extradition, and when plaintiff was released from custody by the State of Georgia, he was extradited to Tennessee pursuant to this waiver.

4

> First, Congress must have intended that the provision in question benefit the plaintiff. Second, the plaintiff must demonstrate that the right assertedly protected by the statute is not so "vague and amorphous" that its enforcement would strain judicial competence. Third, the statute must unambiguously impose a binding obligation on the States. In other words, the provision giving rise to the asserted right must be couched in mandatory, rather than precatory, terms.

*Id.* at 340-341 (citations omitted).

The Supreme Court has explicitly dealt with the first two prongs — "The legislative history of the [IAD] . . . emphasizes that a primary purpose of the Agreement is to protect prisoners against whom detainers are outstanding." *Cuyler v. Adams*, 449 U.S. 433, 449 (1981) — and there can be no doubt that all obligations of the state actors included in Article III of the IAD are couched in mandatory terms. Accordingly the IAD creates a federal right.

Based on the analysis of the law as provided in the undersigned's order denying the defendants' motion to dismiss, the facts demonstrate that plaintiff Barnett's right afforded by the IAD was violated when the defendants failed to forward Barnett's paperwork to the proper authorities in Tennessee after Tennessee filed its detainer on the plaintiff.

**Applicability of Section 1983**

Injunctive Relief

Whether §1983 is the appropriate remedy for a sending state official's violation of an inmate's rights under the IAD has never been addressed in this circuit. The Supreme Court, however, has held that if a prisoner does everything he can pursuant to Article III of the IAD to have a his trial in a state with a detainer on him, but the officials of the sending state fail to forward the documentation to the proper authorities in the receiving state, the protections of the IAD are not implicated. **Fex v. Michigan**, 507 U.S. 43 (1993).

5

The dissent in *Fex* acknowledges that both parties to that case suggested that recourse through §1983 could be appropriate. *Id.* at 55 n.1 (Blackmun, J. dissenting). However, it is unclear as to whether even Justice Blackmun's dissent contemplates monetary damages or merely claims for injunctive relief.[3]

## Monetary Damages

The Prison Litigation Reform Act of 1995 ("PLRA") includes a provision that bars monetary relief for mental or emotional injury unless an inmate plaintiff can make a showing of physical injury. 42 U.S.C. §1997e(e). In this case, plaintiff Barnett makes no allegation of any injury more than mental or emotional injury resulting from the defendants' actions and makes no showing of any physical injury. Accordingly, any claims for compensatory damages are barred by the PLRA. Nominal damages, however, may still be available to a plaintiff in a §1983 action even without an actual injury if he can show the violation of a federal right. **Hughes v. Lott**, 350 F.3d 1157, 1162 (11th Cir. 2003).

Punitive damages are available under §1983 but only "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." **Smith v. Wade**, 461 U.S. 30, 56 (1983). The defendants' actions in this case were not motivated by evil; their conduct was based entirely on a mistaken interpretation of a statute that has never been interpreted in this jurisdiction. Such conduct does not rise to the level of reckless or callous indifference. Accordingly, assuming that punitive damages are permitted in cases brought pursuant to the IAD, such damages are not in order in this particular case and need not be discussed any further.

---

[3]Whether §1983 or a state mandamus action would be more appropriate remains unanswered. In the instant case, however, the issue was mooted when the plaintiff was released from Georgia's custody and taken to Tennessee.

## QUALIFIED IMMUNITY

As mentioned earlier, qualified immunity shields government actors from liability unless their actions violate a federal law that was clearly established at the time of their actions. Qualified immunity protects government officials performing discretionary functions from liability if their conduct violates no clearly established right of which a reasonable person would have known. Plaintiff has the burden of showing that the official's acts violated clearly established law and that pre-existing law dictates the conclusion for every like-situated, reasonable government agent that said actions violated federal law in the circumstances. *Alexander v. University of North Florida*, 39 F.3d 290 (11th Cir. 1994), *cert. denied*, 514 U.S. 1067, 115 S. Ct. 1699 (1995).

In the instant case, the law regarding whether Barnett's IAD paperwork became valid when Tennessee filed a detainer has not been clearly established in this circuit. Georgia authorities failure to comply with Barnett's request that he be sent to Tennessee was based solely upon their erroneous interpretation of the IAD's requirements. Therefore, although their actions violated plaintiff's rights pursuant to the IAD, they are shielded by qualified immunity, and judgment is appropriate in favor of the defendants.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment must be **GRANTED**, and the plaintiff's motion for summary judgment must be **DENIED**. Let judgment be entered accordingly.

IT IS SO ORDERED this 25th of AUGUST, 2008.



CLAUDE W. HICKS, JR.
UNITED STATES MAGISTRATE JUDGE